[Cite as *Lakewood v. Smith*, 2026-Ohio-2937.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF LAKEWOOD,                    :

    Plaintiff-Appellee,          :

                                 No. 115819

    v.                            :

MICHAEL SMITH,                       :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 30, 2026

---

Criminal Appeal from the Lakewood Municipal Court
Case No. CRB 2300524

---

### *Appearances:*

Myriam M. Miranda, City of Lakewood Chief Prosecutor, and Andrew N. Fleck, City of Lakewood Assistant Prosecutor, *for appellee.*

Michael Smith, *pro se.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Defendant-appellant Michael Smith, pro se, appeals the trial court's denial of his various post-conviction motions. This case centers around Smith's contention that the City of Lakewood withheld exculpatory evidence and thus he

should be granted relief from judgment or a new trial. Finding no merit to the appeal, we affirm the trial court's decision denying those motions.

## I. Factual History and Procedural Background

{¶ 2} This case has a long and unique procedural history, some of which can be found in the following cases: *Smith v. Neff*, 2024-Ohio-1881 (8th Dist.) (seeking a writ to prevent dissemination of sealed records); *N.S. v. M.S.*, 2024-Ohio-6020 (8th Dist.) (appeal from the civil-protection-order trial court ("CPO court") granting a motion to unseal the civil protection record ("CPO record")); *Lakewood v. Smith*, 2025-Ohio-2447 (8th Dist.) (direct appeal from Smith's conviction of violating the ex parte civil protection order (sometimes referred to as "CPO")); and *Lakewood v. Smith*, 2026-Ohio-1763 (8th Dist.) (denial of Smith's application to reopen his direct appeal). But for purposes of this appeal, this court will focus only on Smith's October 2025 motions that he filed with the trial court after a May 2024 jury found him guilty of violating the CPO.

{¶ 3} On October 14, 2025, Smith filed five motions — (1) motion for leave for a new trial; (2) motion pursuant to Crim.R. 57(B) and Civ.R. 60(B) relief from judgment; (3) motion to appoint counsel for assistance with defendant's Civ.R. 60(B) motion and motion for leave to file a motion for new trial; (4) motion for recusal of the assigned trial court judge; and (5) motion to conduct depositions of prosecutor based on investigatory conduct. The following day, Smith filed an amended motion for leave for a new trial.

**{¶ 4}** On October 17, 2025, the trial court issued the following order: "Defendants [sic] motions to conduct deposition of prosecutor and for leave to file a new trial are denied. All other of defendants [sic] motion [sic] filed on 10/14/25 are denied."

**{¶ 5}** This appeal followed.

## II. The Appeal

**{¶ 6}** Smith raises the following three assignments of error, which will be addressed out of order for ease of discussion:

> **Assignment of Error One**
> The trial court abused its discretion by denying [Smith's] post-judgment motion for relief (pursuant to Civ.R. 60(B)) without granting a new trial or other relief, on the record itself, despite the completeness of the record and newly discovered exculpatory evidence, where he established that the [City] failed to disclose material exculpatory evidence, in violation of his due process rights.

> **Assignment of Error Two**
> The trial court abused its discretion by denying [Smith's] motion for leave to file a motion for a new trial, which, the new and compelling evidence attached to the motion, conclusively established that [Smith] was unavoidably prevented from discovering new evidence within the 120 days. The completeness of the record allows the trial court to resolve the motion on the record itself.

> **Assignment of Error Three**
> In the alternative, if there was an internal conflict within the trial court about the record, it abused its discretion when it failed to hold a hearing to have witnesses present evidence regarding [Smith's] motion for leave to file a motion for new trial or Civ.R. 60(B) motion, depose the prosecutor or appoint counsel, even though the record demonstrated by clear and convincing proof that [Smith] was unavoidably prevented from discovering the evidence within 120 days of his conviction, and there was ineffective assistance of counsel.

## A. Motion for Leave to File a Motion for New Trial

{¶ 7} In Smith's second assignment of error, he challenges the trial court's denial of his motion for leave to file a motion for a new trial.

{¶ 8} We review a trial court's ruling on a motion for leave to move for a new trial for an abuse of discretion. *State v. McNeal*, 2022-Ohio-2703, ¶ 13, citing *State v. Hawkins*, 66 Ohio St.3d 339, 350 (1993) ("The decision to grant or deny a motion for a new trial on the basis of newly discovered evidence is within the sound discretion of the trial court and, absent an abuse of discretion, that decision will not be disturbed.").

{¶ 9} Motions for a new trial are governed by Crim.R. 33. A new trial may be granted if any of several grounds exist that materially affected the defendant's substantial rights, including "(1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial; (2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state," and (6) newly discovered evidence. Crim.R. 33(A).

{¶ 10} In October 2025, Smith moved for a new trial, raising two grounds — (1) newly discovered evidence, and (2) "irregularity in the proceedings or 'misconduct' by the Judge," which also relied on newly discovered evidence.[1]

---

[1] Although Smith alleged in his motion for leave that the City and the trial court engaged in misconduct, Smith has not raised any argument on appeal in support of this ground. Accordingly, we will not address that ground or the arguments raised in support.

{¶ 11} Crim.R. 33(A)(6) provides that a trial court may grant a defendant's motion for a new trial where the discovery of new evidence materially affects the defendant's substantial rights and

> [w]hen new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

{¶ 12} Typically, a motion for a new trial must be filed within 14 days of the verdict. *See* Crim.R. 33(B). However, a motion for a new trial on account of newly discovered evidence must be filed within 120 days after the verdict. *Id.* If the relevant time period has expired, the defendant must first seek leave from the trial court to file a delayed motion for a new trial. *State v. Murphy*, 2021-Ohio-3925, ¶ 25 (8th Dist.), citing *State v. Hale*, 2019-Ohio-1890, ¶ 9 (8th Dist.). Because the relevant Crim.R. 33(B) timeframe had expired — the jury found Smith guilty in May 2024 — Smith was required to seek and obtain leave.

{¶ 13} When a motion for leave to file a new-trial motion is grounded on newly discovered evidence, the movant must show that he had been "unavoidably prevented" from timely discovering that evidence. *State v. Brown*, 2025-Ohio-274, ¶ 22 (8th Dist.). Importantly, "[w]hen a defendant seeks leave to file a motion for a new trial under Crim.R. 33(B), the trial court may not consider the merits of the

proposed motion for a new trial until after it grants the motion for leave." *State v. Hatton*, 2022-Ohio-3991, ¶ 30, citing *State v. Bethel*, 2022-Ohio-783, ¶ 41. "The sole question before the trial court when considering whether to grant leave is whether the defendant has established by clear and convincing proof that he was unavoidably prevented from discovering the evidence on which he seeks to base the motion for a new trial." *Hatton* at ¶ 30.

{¶ 14} Moreover, Smith's motion claiming newly discovered evidence raised a *Brady* claim. *Brady v. Maryland*, 373 U.S. 83 (1963), governs situations where the prosecution withholds evidence that tends to exculpate a criminal defendant. "When the prosecution withholds material, exculpatory evidence in a criminal proceeding, it violates the due process right of the defendant under the Fourteenth Amendment to a fair trial." *State v. Johnston*, 39 Ohio St.3d 48, 60 (1988). *Brady* violations may be found regardless of whether the defense requested the evidence and "irrespective of the good faith or bad faith of the prosecution." *Brady* at 87.

{¶ 15} When a defendant seeks to assert a *Brady* claim in an untimely postconviction motion, the defendant satisfies the "unavoidably prevented" requirement by establishing that the prosecution suppressed the evidence on which the defendant relies. *Bethel* at ¶ 25, 29 (rejecting the State's assertion that a defendant seeking to raise a *Brady* claim is required to show that he could not have discovered the suppressed evidence by exercising reasonable diligence); *see also State v. McNeal*, 2022-Ohio-2703, ¶ 17, and *Hatton* at ¶ 31.

**{¶ 16}** Smith contends he was unavoidably prevented from discovering certain evidence because it was either contained in the CPO record that was subsequently sealed or the City willfully withheld it from him. He claimed that he did not discover the evidence until December 2024 following a public-records request. In support of his motion, Smith set forth the purported new evidence.

> [The] evidence in question consists of three categories of documents entirely within the State's possession or control that were never disclosed to the Defense before trial by the Prosecution: (1) correspondence sent to the alleged Victim herself stating that service of a protection order was never perfected; (2) an affidavit filed by the State in the civil protection order case to unseal that case and obtain sealed records; and (3) law enforcement records (such as certified mail receipts or return-of-service forms) indicating that the ex parte protection order was never actually served.

Smith claims that "[e]ach of these items was concealed from the Defense prior to and during trial[,]" and "no amount of diligence by [him or his counsel] could have uncovered them earlier." Based on our review of Exhibit Nos. A-E attached to Smith's motion for leave to file for a new trial, we find that this evidence on its face does not demonstrate unavoidable prevention.

### 1. Correspondence Sent to the Victim Regarding Service

**{¶ 17}** The court correspondence is two court-generated postcards issued in the CPO case that were sent to the victim, notifying her that personal service of the CPO was not successful on Smith by neither the Cuyahoga nor the Wayne County Sheriffs' Departments. The other "document" is a copy of the envelope the victim purportedly used to provide Detective Heather Herpka ("Detective Herpka") with those postcards. Smith contends that these documents were part of the CPO record

that was "sealed from public view by court order . . . [thus he] and his Counsel were barred from accessing its contents through ordinary public records requests or court file inspection." He contends that he did not receive these documents until December 2024 following a public-records request.

{¶ 18} Initially we note that Smith was a party, acting pro se, in the CPO case. Accordingly, he had access during the proceedings to any and all court records and information about service, including information contained on the public docket. The record before this court overwhelmingly demonstrates the Smith participated in those proceedings.

{¶ 19} More importantly, however, prior to the start of Smith's May 2024 jury trial, counsel specifically addressed discovery of the postcards.

> [COUNSEL]: Okay. All right. Your Honor, there is one other matter. While the — so while this case was going on, the other case has been going in the Court of Appeals, and there have been some filings by my client and responses from the City of Lakewood, I believe.
>
> And yesterday, my client gave me some items that apparently were turned over to him as part of the response that the City of Lakewood filed to something that he filed [in] the Court of Appeals. And they are exculpatory evidence which may not have been turned over. Well, I'm submitting it may be exculpatory evidence that may not have been turned over to us prior to yesterday, when it was turned over to my client.
>
> And it is mailings from the Common Pleas Court, or copies of the mail — the mailing cards, the mailing cards from the Common Pleas Court, indicating that there was a failure of service of the protection order on Mr. Smith in both Cuyahoga and Wayne County.

(May 22, 2024, trial transcript, p. 12-13.)[2]

{¶ 20} Following this statement, the prosecutor represented that discovery was fully provided, and when questioned by the court whether counsel had received these items, defense counsel responded, "I didn't — I don't recall seeing these items." (Tr. 14-15).  The court then stated:

> [COURT]:  Well, the other thing is your client attached the appearance docket [to one of his motions], and I'm guessing those postcards that say failure of service are documented in here.

(Tr. 15.)

{¶ 21} Accordingly, the record refutes Smith's claim that he did not discover the postcards until a public-records request in December 2024.  Smith knew on the day of his trial that these mailings existed.  Any argument that the City committed a prejudicial discovery violation could have been raised in his direct appeal.

{¶ 22} Next, the information contained in the postcard correspondence is not new.  The overriding issue in Smith's trial, direct appeal, and application for reopening was whether he was served with the ex parte protection order — the defense he raised during his May 2024 trial.  Extensive testimony was offered by Detective Herpka about service, including that the Wayne County Sheriff's Department did not perfect personal service on Smith.  *See* tr. 134, 157 (detective

---

[2] Following trial, counsel withdrew "any allegation of intentional — intentional failure to disclose exculpatory evidence that was disclosed, the docket that — which reflected the information and evidence." (Tr. 204.)  Smith did not support his motion for leave or other motions with an affidavit from his counsel either confirming that he did not receive the postcards or that his withdrawal was in error or that he was mistaken.

testifying that she learned that service was not made by Wayne County Sheriff's department). Accordingly, Smith knew that the City never claimed personal service was achieved and thus he was not unavoidably prevented from timely discovering this evidence for purposes of moving for a new trial.

{¶ 23} Finally, insofar as he claims that the envelope itself is newly discovered, Smith has failed to demonstrate how it qualifies as *Brady* material, such that the envelope tends to exculpate him. He only alleges that the envelope, which contained the postcards, was given to Detective Herpka by the victim.

{¶ 24} Based on the foregoing, we find that Smith has failed to demonstrate that the City suppressed this evidence supporting his motion for leave to move for a new trial. The trial court did not abuse its discretion in denying Smith's motion for leave on this basis because neither the information contained in the postcards nor the documents themselves were newly discovered. The record demonstrates that Smith had knowledge of the existence of the postcards prior to trial; the envelope is not exculpatory evidence.

### 2. Affidavit to Unseal the Trial Court Record

{¶ 25} Smith further supported his motion for leave by asserting that he discovered after trial the affidavit submitted by the prosecuting attorney that supported and was appended to the victim's motion to unseal the CPO record. According to Smith's motion, this affidavit was concealed by the prosecution, who "did not inform defense counsel that it had accessed sealed records, nor did it turn over the affidavit or all the exculpatory records it obtained." He further claims that

"he did not know that the State had effectively opened a secret trove of evidence related to the CPO case." The record and case history refute Smith's assertion that he was unaware of this affidavit from the prosecutor.

{¶ 26} Again, Smith was a party, acting pro se, in the CPO case. Accordingly, he had access during those proceedings to all court records and information pertaining to that case.

{¶ 27} Further, the parties addressed the issue of the CPO record being unsealed immediately prior to the start of Smith's May 2024 trial. (Tr. 4-12.) During that discussion, the parties stated that the common pleas court granted the victim's motion to unseal the record and that decision was pending on appeal. *Id.*; *see N.S.*, 2024-Ohio-6020 (8th Dist.) (Smith's pro se appeal challenging the trial court's decision unsealing the CPO record).

{¶ 28} This court, in addressing Smith's pro se appeal challenging the trial court's unsealing of the CPO record, set forth the procedural history and background of the case. Relevant to this current appeal, this court stated:

> On February 21, 2024, N.S., through counsel, filed a motion to unseal the record to allow the prosecution of her violation complaint in the Lakewood Municipal Court. *Attached* to the motion was an affidavit from an assistant prosecutor for the City of Lakewood. The assistant prosecutor believed that unsealing the record was necessary for a prosecution of that case. *M.S. filed a motion* for an extension of time *to prepare an opposition*, characterizing N.S.'s motion as part of her "harassment campaign" against him. M.S. *also alleged that the State was already in possession of a copy of the protection order* and other evidence necessary for the prosecution of the case.

(Emphasis added.) *Id.* at ¶ 14.

{¶ 29} Based on the fact that Smith sought to oppose the motion to unseal, characterized its content as a "harassment campaign," and alleged that the State already possessed a copy of the order, the record demonstrates that Smith knew about the motion to unseal the record and supporting prosecutor affidavit — the affidavit that he now claims was not discovered until December 2024.

{¶ 30} Accordingly, we find that Smith has failed to demonstrate that the City suppressed this evidence supporting his motion for leave to file a motion for a new trial because the affidavit was not newly discovered. The record demonstrates that Smith knew about the affidavit prior to trial.

### 3. Law Enforcement Records

{¶ 31} Smith's final "category of new evidence" involves law enforcement records showing lack of service. Attached to his motion was (1) a return of service form from the Cuyahoga County Sheriff's Department, filed in the CPO case in April 2023; (2) a form requesting service by certified mail and personal service to the Wayne County Sheriff's Department, filed in the CPO case on April 21, 2023; (3) a Wayne County Sheriff's Department form revealing failure of service on Smith, filed in the CPO case on May 2, 2023; and (4) two emails about discovery either received or sent to Smith in December 2023 and January 2024. According to Smith, "none of these service records were provided to the defense, even though service (or lack thereof) was a critical fact bearing on [Smith's] culpability for any alleged CPO violation."

{¶ 32} For the final time, we note that Smith was a party, acting pro se, in the CPO case. Accordingly, he had access during the proceedings to all court records and information pertaining to that case. The file stamps on the face of these documents reveal that the service forms, either from the Cuyahoga or Wayne County Sheriffs' Departments, were filed with the CPO court.

{¶ 33} Nevertheless, and as previously discussed in addressing the postcards sent to the victim, the information contained in the documents is not new and was known to Smith prior to trial. Additionally, the documents do not qualify as *Brady* material because they do not tend to exculpate him — the City never alleged that Smith was personally served with the CPO.

{¶ 34} The criminal complaint filed against Smith alleged that he recklessly violated the ex parte protection order by sending the victim a certified mail letter. (Docket No. 4.) The affidavit of probable cause, signed by Detective Herpka, provided that on June 8, 2023, the victim received a certified letter at her residence from Smith, in violation of the CPO issued on April 11, 2023, which was "still valid and Smith was served via certified mail on 5-1-23 and participated in a case management conference with the [CPO] court on May 25, 2023." (Docket No. 3.)

{¶ 35} The trial court record also contains a police report dated June 16, 2023, wherein it details that Detective Herpka contacted the Wayne County Sheriff's Department and "was advised they could not locate [Smith], so service was not completed and they returned [the ex parte order] to Cuyahoga County," and "was

advised that [Smith] was sent a certified letter . . . and it was received on 5-1-23." (Docket No. 14.)

{¶ 36} At the May 2024 trial, Detective Herpka testified that service upon Smith was unsuccessful by the Wayne County Sheriff's Department. (Tr. 134, 157.) Regarding successful service, Detective Herpka testified that she learned that Smith was served with the ex parte protection order by certified mail on May 1, 2023. (Tr. 135, 157-158, 160.) She admitted, however, that she did not have the certified mail mailing or service receipt. (Tr. 158-159.) This court, in affirming Smith's conviction of violating the ex parte protection order, found Detective Herpka's testimony admissible and sufficient to prove that Smith knew of the ex parte order before sending the victim the letter. *See Smith*, 2025-Ohio-2447, at ¶ 18, 23 (8th Dist.). Accordingly, the sheriff service forms are not exculpatory because the City did not rely on them to prove Smith's guilt in this case.

{¶ 37} Regarding the two emails either received or sent by Smith, neither contains *Brady* material. Moreover, the emails were either sent or received before the May 2024 trial. Accordingly, Smith's argument that these documents could not have been timely discovered is without merit.

{¶ 38} We find that Smith has failed to demonstrate that the City suppressed this evidence supporting his motion for leave to move for a new trial because neither the information contained in the service forms nor the documents themselves were newly discovered. Moreover, the evidence was cumulative to other evidence, which was known prior to trial, and it was not exculpatory.

{¶ 39} In conclusion and based on the foregoing, we find the trial court did not abuse its discretion in denying Smith's motion for leave. Smith failed to withstand his burden of proving by clear and convincing evidence that he was unavoidably prevented from discovering the evidence or that the City suppressed the evidence to grant him leave to move for a new trial. His second assignment of error is overruled.

**B. Civ.R. 60(B)**

{¶ 40} In his first assignment of error, Smith contends that the trial court abused its discretion by denying his post judgment motion for relief, pursuant to Civ.R. 60(B), because of the newly discovered exculpatory evidence and the prosecution's failure to disclose such exculpatory evidence. The issues he presents for review center around the prosecution allegedly suppressed material, exculpatory evidence. Having previously determined in addressing his second assignment of error that Smith failed to demonstrate that the City suppressed the evidence Smith now relies upon, or failed to demonstrate that the material was exculpatory, we find no error with the trial court's decision to deny Smith's Civ.R. 60(B) motion.

{¶ 41} Insofar as his Civ.R. 60(B) motion attempted to raise claims of ineffective assistance of counsel and prosecutorial misconduct based on the same purported suppressed evidence, those claims are also summarily rejected on the same basis as discussed above.

{¶ 42} Smith's first assignment of error is overruled.

### C. Evidentiary Hearing

{¶ 43} Finding no merit to Smith's first and second assignments of error, we summarily overrule Smith's third assignment of error challenging or alternatively requesting that the trial court should have held an evidentiary hearing on his motions. *See Brown*, 2025-Ohio-274 at ¶ 27 (8th Dist.) ("An evidentiary hearing on a motion for leave is required only if the evidence the movant offers in support his motion for leave demonstrates on its face unavoidable prevention."). Smith's third assignment of error is overruled.

## III. Conclusion

{¶ 44} Based on the foregoing, we find the trial court did not abuse its discretion in denying Smith's October 2025 post-conviction motions.

{¶ 45} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Lakewood Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

MICHAEL JOHN RYAN, P.J., CONCURS;
EILEEN A. GALLAGHER, J., DISSENTS (WITH SEPARATE OPINION)

EILEEN A. GALLAGHER, J., DISSENTING:

{¶ 46} I respectfully dissent for the same reasons as stated in my dissent in *Lakewood v. Smith*, 2025-Ohio-2447 (8th Dist.) (E.A. Gallagher, J., dissenting). *See also Lakewood v. Smith*, 2026-Ohio-1763 (E.A. Gallagher, J., dissenting).